UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LEONARD STANDIFER,

Plaintiff,

v.  CAUSE NO. 3:18CV1020-PPS/MGG

MARK SEVIER, et al.,

Defendants.

## OPINION AND ORDER

Leonard Standifer, a prisoner without a lawyer, filed a complaint alleging that he has been denied his right to practice his religion. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Standifer, who has practiced Islam for over thirty years, alleges that he was attending a religious Jummah service at the Westville Correctional Facility (WCF) on November 9, 2018, when he needed to use the restroom. He asked Chaplain Blummer to unlock the door for him, but Chaplain Blummer refused. Standifer decided he couldn't wait for the service to end before using the restroom, so he attempted to head back to his dorm. Although Standifer had witnessed Chaplain Blummer allow other inmates to

leave religious services in the past without consequence, Standifer was told that he was not authorized to do so and was directed to return to the auditorium. When he did not, he was subsequently handcuffed by an unnamed officer.

One week later, Chaplain Blummer visited Standifer in his dorm to inform him that he was suspended from attending all religious services. Standifer requested an interview with Warden Mark Sevier to insist that his rights to practice his religion be reinstated. In response to that request, Chaplain Blummer sent him a written letter detailing the terms of his suspension effective November 1, 2018, which noted that he was eligible to return to the "count letters" upon written request after ninety days but could be suspended for up to six additional months for poor conduct. *See* ECF 2-1 at 1–2. Standifer has sued Warden Sevier, Chaplain Blummer, Chaplain Walton, and Chaplain Ungroudgt for monetary damages and for injunctive relief in the form of restoration of his right to "Religious Practices and Islamic Affairs." ECF 2 at 4.

Prisoners have a right to exercise their religion under the Free Exercise Clause of the First Amendment. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). Nevertheless, correctional officials may restrict the exercise of religion if the restrictions are reasonably related to legitimate penological objectives, which include safety, security, and economic concerns. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). The Religious Land Use and Institutionalized Persons Act (RLUIPA) affords even broader protections than the First Amendment. This act prohibits governmental entities from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the

2

burden on that person is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *Holt v. Hobbs*, 135 S. Ct. 853 (2015). Though money damages and injunctive relief are available under the First Amendment, only injunctive relief is available under RLUIPA. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011).

Several of Standifer's claims can be disposed of in short order. According to the docket (ECF 10), Standifer has been transferred from WCF—where the events in question occurred—to the Indiana State Prison. Because there is not a realistic likelihood that Standifer will again be incarcerated at WCF and subjected to the same actions that he complains about here, his claims for injunctive relief are "purely speculative in nature" and must be dismissed. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009)). And, because he has no claim for injunctive relief in light of that transfer, he is not entitled to any relief under RLUIPA. *Id*. at 717 (noting that state officials are immune from monetary damages in their official capacities and that they cannot be sued in their individual capacities under RLUIPA).

This leaves only Standifer's First Amendment claims for monetary damages. All of the Defendants in their official capacity are shielded from liability by the Eleventh Amendment. *Maddox*, 655 F.3d at 716. With regard to Standifer's individual capacity claims, liability under 42 U.S.C. § 1983 "depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). The doctrine of *respondeat superior*, which allows an

employer to be held liable for subordinates' actions in some types of cases, has no application to § 1983 actions. *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993). "'[N]o prisoner is entitled to insist that one employee do another's job,' and the division of labor is critical to the efficient functioning of the organization." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) (quoting *Burks*, 555 F.3d at 594).

Standifer alleges that Warden Sevier was "in-cahoots" with Chaplain Blummer. ECF 2 at 3. But the only fact he provides in support of that assertion is that Chaplain Blummer was the one to respond to his request for an interview with the Warden. That is not enough. Personal liability requires more than a showing that the defendant knew of his plight or that the defendant was a supervisor. *See Burks*, 555 F.3d at 595. Similarly, although Standifer lists Chaplain Walton and Chaplain Ungroudgt as Defendants in the caption of his complaint, he does not list them in the body of the complaint or explain how they were involved in the matter at all. "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. Accordingly, Warden Sevier, Chaplain Walton, and Chaplain Ungroudgt will be dismissed from this lawsuit.

Finally, Standifer claims that Chaplain Blummer restricted his right to exercise his religion when he unreasonably refused to let him use the restroom or leave the Jummah service and then subsequently denied him the ability to practice any form of his religion for an extended period of time. To determine if such a restriction is constitutional, I must consider several factors: (1) whether the restriction is rationally connected to a legitimate government objective; (2) whether there is an "alternative means of exercising" the restricted religious right; (3) what impact the restriction would

4

have on other inmates as well as prison staff and facility resources; and (4) the existence of other options that would suggest the prison is exaggerating its concerns. *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) (citing *Turner*, 482 U.S. at 89–91). Although it appears that the restriction in this case was tied to a legitimate government objective (namely, prison security and discipline related to Standifer's refusal to follow orders), Standifer has alleged that he was unreasonably singled out and then subjected to an excessively harsh restriction—which prevented him from practicing his religion altogether. Giving him the benefit of the inferences to which he is entitled at this stage, as I must, it is plausible that less restrictive options were available and that Chaplain Blummer was exaggerating the penological concerns when he suspended Standifer. And, while it is not clear from the face of the complaint, it is possible that Chaplain Blummer chose to punish Standifer in the manner that he did specifically because of his faith. *Cooper v. Pate*, 382 F.2d 518, 521 (7th Cir. 1967) ("It is clear that prison authorities must not punish a prisoner nor discriminate against him on account of his religious faith."). Therefore, Standifer will be allowed to proceed against Chaplain Blummer.

ACCORDINGLY, the court:

(1) GRANTS Leonard Standifer leave to proceed on a First Amendment claim against Chaplain Blummer in his individual capacity for monetary damages for violating his right to exercise his religion by suspending him for ninety days from all Islamic services and count letters effective November 1, 2018;

(2) DISMISSES Warden Mark Sevier, Chaplain Walton, and Chaplain Ungroudgt;

(3) DISMISSES all other claims;

5

(4) DENIES AS MOOT the motions for screening (ECF 9, 11, 12);

(5) DIRECTS the clerk and the United States Marshals Service to issue and serve process on Chaplain Blummer with a copy of this order and the complaint (ECF 2) as required by 28 U.S.C. § 1915(d); and

(6) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Chaplain Blummer to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which Leonard Standifer has been granted leave to proceed in this screening order.

SO ORDERED on November 5, 2019.

    /s/ Philip P. Simon
    JUDGE
    UNITED STATES DISTRICT COURT